A05A1577. ELLIOTT v. THE STATE.
(620 SE2d 584)

PHIPPS, Judge.

Eric Farrell Elliott was charged with possession of methamphetamine with intent to distribute after the police executed a search warrant and discovered the substance in his residence. Elliott moved to suppress the fruits of the search, arguing that the state had failed to show probable cause to support the issuance of the warrant, which was based on a confidential informant's tip. The trial court denied the motion, and a jury found Elliott guilty of the charge. He appeals, arguing that the court should have granted his motion to suppress. He also claims that the court should have declared a mistrial after the prosecutor made improper comments in the jury's presence. Finding no error, we affirm.

1. At the hearing on the motion to suppress, Agent John Stillman of the White County Sheriff's Department testified that he interviewed an informant at the White County Detention Center who had just been arrested for, among other things, possession of methamphetamine. According to Stillman, the informant told him that he had been stopped by the police after leaving Elliott's residence, where he had purchased the methamphetamine from Elliott. The informant described the inside of the residence and gave Stillman directions to it. He told Stillman that Elliott customarily barred the front door by placing a couch in front of it. The informant also told Stillman that his motive for providing the information was that he "wanted off of the methamphetamine and to help other people stay off the methamphetamine by turning in dealers."

Stillman confirmed the informant's description of the exterior of the residence, then looked up the address at the tax assessor's office and discovered that the house belonged to Elliott's father. Stillman testified that he had previously received information about Elliott from "multiple sources," but he did not identify them.

Based on this information, Stillman applied to a magistrate for a warrant to search the residence. Stillman gave the magistrate an

affidavit setting forth the basis for the warrant and also spoke with her personally. He told her the name of the informant who had provided the information about Elliott, and he explained the criminal charges that were pending against the informant. After the magistrate issued a warrant, Stillman and other officers searched the residence and found glass smoking pipes, digital scales, and methamphetamine.

When determining whether probable cause exists for a search warrant,

> the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.[1]

When the police seek a warrant based on information from an informant, they must give the magistrate sufficient information to independently judge the reliability of both the information and the informant.[2]

> The sufficiency of [the] information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. . . .[3]

"[W]hen a *named* informant makes a declaration against penal interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit that statement."[4] Thus,

---

[1] *Kelly v. State*, 269 Ga. App. 377, 379 (604 SE2d 242) (2004) (citation and punctuation omitted).

[2] See *Mitchell v. State*, 239 Ga. App. 735, 736 (1) (521 SE2d 873) (1999).

[3] *Stanford v. State*, 251 Ga. App. 87, 89 (1) (553 SE2d 622) (2001) (footnote omitted).

[4] *Graddy v. State*, 277 Ga. 765, 766 (1) (596 SE2d 109) (2004) (citation and punctuation omitted; emphasis in original).

"inculpatory statements that are made by a known or identified informant can establish probable cause for [the] issuance of a search warrant."[5]

In this case, the informant was in jail on pending methamphetamine charges. He gave Stillman a statement against his penal interest — that he had bought the methamphetamine from Elliott at Elliott's residence. Stillman was able to confirm the location and ownership of the residence. When he applied for the warrant, he presented this information to the magistrate, thus providing her with a sufficient basis to determine that the informant's tip was reliable. Under the circumstances, the trial court did not err in denying Elliott's motion to suppress.[6]

Elliott cites *Fiallo v. State*,[7] but that case is inapposite. In *Fiallo*, an informant told a police officer that he had purchased cocaine at the defendant's house within the past 72 hours. But the informant was not named, and the police officer testified that he did not consider him to be reliable; thus, we held that there were insufficient indicia of reliability to establish probable cause.[8] Here, Stillman identified the informant to the magistrate.

2. At a pre-trial *Jackson-Denno* hearing, Stillman testified that after searching the residence, he read Elliott his *Miranda* rights, and Elliott agreed to speak to him. Elliott then admitted ownership of the methamphetamine in the residence. The trial court found by a preponderance of the evidence that Elliott had knowingly and intelligently waived his right to an attorney and voluntarily made a statement to police. Accordingly, the court ruled that the statement would be admissible at trial.

At trial, defense counsel objected when the prosecutor began to question Stillman about Elliott's statement. The following colloquy occurred:

[PROSECUTOR]: And what, if anything, did you ask Mr. Elliott?
[STILLMAN]: I asked Mr. Elliott —
[DEFENSE COUNSEL]: Your Honor, at this point we're going to — I understand the previous ruling by the Court, but we have an objection to this line of questioning and to any response in relation to the questioning of Mr. Elliott.
THE COURT: Does the State wish to respond to that?
[PROSECUTOR]: Your Honor, I believe that we've already

---

[5] Id.; see also *Kelly*, supra; *Tomlinson v. State*, 242 Ga. App. 117, 119 (527 SE2d 626) (2000).
[6] See *Kelly*, supra; *Tomlinson*, supra.
[7] 240 Ga. App. 278 (523 SE2d 355) (1999).
[8] Id. at 279.

addressed that issue in the motion to suppress. I don't believe that there's any indication that he was under any pressure, that the agent threatened, harassed or intimidated him into making these statements. He's already stated

—

THE COURT: Did the motion to suppress deal with statements from both?

[PROSECUTOR]: I —

[DEFENSE COUNSEL]: Your Honor, I would prefer to address that outside the presence of the jury.

The court then dismissed the jury and overruled defense counsel's objection to the introduction of Elliott's statement. Defense counsel moved for a mistrial on the ground that the prosecutor should not have revealed to the jury the court's *Jackson-Denno* finding that the statement was voluntary. The court denied the motion and gave no curative statement.

Elliott cites *Dean v. State*,[9] in which we held that the trial court erred by telling the jury that a police officer "did comply with the constitution and the statute" in obtaining the defendant's statement.[10] Because the voluntariness of a statement is ultimately a question of fact for the jury, we concluded that the court had improperly commented on the evidence in violation of former OCGA § 17-8-55.[11] *Dean* does not apply here because the prosecutor, not the court, made the comments to which Elliott objects. Moreover, the prosecutor did not disclose the court's *Jackson-Denno* findings to the jury; she merely commented that *she* did not believe there was any evidence of threats, harassment, or intimidation.

Elliott next argues that the prosecutor's comments violated OCGA § 17-8-75, which provides: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same." This statute concerns the introduction of facts not in evidence; it does not prevent counsel from commenting on and drawing deductions from the evidence.[12] In this case, the record shows that Stillman was questioned about how he obtained Elliott's statement. The prosecutor did not introduce new facts into evidence; she merely commented that there was no evidence of coercion. Later, the court

---

[9] 168 Ga. App. 172, 174 (3) (308 SE2d 434) (1983).

[10] Id.

[11] Id. at 176. Former OCGA § 17-8-55 was redesignated OCGA § 17-8-57 by Ga. L. 1985, p. 1190, § 1.

[12] See *Thompson v. State*, 150 Ga. App. 567, 568 (2) (258 SE2d 180) (1979); *Bradley v. State*, 135 Ga. App. 865, 868 (2) (219 SE2d 451) (1975).

instructed the jury thoroughly on its duty to determine whether Elliott had understood his rights and had made the statement voluntarily. Under the circumstances, we find no error.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 1, 2005.

*Charles B. Brown*, for appellant.

*N. Stanley Gunter, District Attorney, Kerry I. Banister, Assistant District Attorney*, for appellee.