**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 13, 2018**

# In the Court of Appeals of Georgia

A17A1389. WYNN v. THE STATE.

DILLARD, Chief Judge.

Brian Wynn appeals his convictions for ten counts of second-degree damage to property. His sole argument on appeal is that the evidence was insufficient to prove that the fair market value of the property damage exceeded $500, which is required to support his convictions. For the reasons set forth *infra*, we vacate Wynn's convictions and remand for further proceedings consistent with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that, on December 21, 2011, ten air-conditioning units outside of a vacant medical center were vandalized, and the perpetrator stole copper pipes from inside each unit. The owner of the medical center reported the vandalism to police, and during the

---

[1] *See, e.g.*, *Hartzler v. State*, 332 Ga. App. 674, 675 (774 SE2d 738) (2015).

investigation that ensued, a police investigator, who was in charge of metal-theft investigations, retrieved a surveillance video taken at the time of the crime. Upon viewing the video, the investigator immediately identified the suspect as Wynn from previous encounters with him, including during compliance checks at a recycling center, as well as during two of Wynn's prior arrests.

Subsequently, Wynn was charged, via indictment, with ten counts of second-degree criminal damage to property—one count for each air-conditioning unit. And following a jury trial, Wynn was convicted on all counts.[2] Wynn then filed a motion for a new trial, which was denied following a hearing. This appeal follows.

In his sole enumeration of error, Wynn argues that the State failed to prove that the fair market value of the damage to the property exceeded $500, which is an essential element of second-degree damage to property.[3] We agree.

---

[2] Wynn's ten convictions were merged into two convictions for sentencing purposes. We do not reach the issue of whether the trial court's decision to merge those convictions was correct, as the State did not appeal that issue.

[3] In his appellate brief, Wynn confirms that he does not dispute the sufficiency of the evidence to prove his identity as the perpetrator, as a surveillance video showed him taking parts out of the air-conditioning units, and a police officer who had interacted with him several times recognized him as the perpetrator. Thus, we address only whether the evidence was sufficient to prove the requisite fair market value of the damage to property.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[4] And in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[5] We will, then, uphold a jury's verdict so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[6] Bearing these guiding principles in mind, we turn now to Wynn's specific challenge to the sufficiency of the evidence to support his convictions.

OCGA § 16-7-23 (a) (1) provides that "[a] person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00." Furthermore, the value of the damage to property (for which the

---

[4] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[5] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted).

[6] *Id.* (punctuation omitted).

3

defendant is responsible) is an essential element of the indicted crimes.[7] And under

OCGA § 16-7-23, the value of damage to the property of another "may be established

by several means."[8] For example, a lay witness may give opinion testimony as to such

value, "subject to stating the factual predicate on which the opinion is based or

otherwise showing that he or she had the opportunity to form a reliable opinion."[9]

Alternatively, the cost of an item may be "sufficient to show the value of damage to

everyday items if supported by other evidence showing the before and after condition

of the item."[10] Additionally, evidence of the "cost to repair an item may also

---

[7] *See, e.g.*, *Lenoir v. State*, 322 Ga. App. 583, 588 (1) (745 SE2d 824) (2013); *Hildebrand v. State*, 209 Ga. App. 507, 508 (1) (433 SE2d 443) (1993).

[8] *Spann v. State*, 250 Ga. App. 354, 354-55 (551 SE2d 755) (2001); *see Bereznak v. State*, 223 Ga. App. 584, 584 (1) (478 SE2d 386) (1996) ("Our cases detail several proper methods for proving the value of the damage.").

[9] *Spann*, 250 Ga. App. at 355; *see Bereznak*, 223 Ga. App. at 584 (1) ("A lay witness may give her opinion as to that value so long as she states the facts on which she bases her opinion or otherwise shows she had the opportunity to form a correct opinion.").

[10] *Spann*, 250 Ga. App. at 355; *accord Bereznak*, 223 Ga. App. at 584 (1); *see Austin v. State*, 315 Ga. App. 713, 715 (727 SE2d 535) (2012) ("[I]t is not sufficient for a victim merely to provide either the original price or the replacement costs of any item. Rather, the fair market value may be established by testimony regarding the original price, coupled with the age of the item and its condition at the time of the crime." (punctuation omitted). *Cf. Pate v. State*, 158 Ga. App. 395, 396 (2) (280 SE2d 414) (1981) ("Purchase price alone is not a sufficient criterion of value and the mere

suffice."[11] Significantly, numerous Georgia cases on the subject of value of the damage "focus on the tangible damaged property itself."[12] This makes perfect sense because "the crime in its essence is 'criminal damage to property,' not total expenses of the owner in connection with property damage."[13]

At trial, the owner of the damaged air-conditioning units testified that he received an estimate that the repairs to his property would cost between $39,000 and $42,000. But he further testified that, because the air-conditioning units were "fairly old," the replacement of those units might require him to replace the inside units too. The owner also testified that, while the repairs were covered by an insurance policy, his insurance company had paid him only about 70 percent of the estimated repair

statement that the value of a thing is a certain sum without stating the reasons for this conclusion lacks probative value.").

[11] *Spann*, 250 Ga. App. at 355 (punctuation omitted); *see Mayfield v. State*, 307 Ga. App. 630, 631 (2) (b) (705 SE2d 717) (2011) ("The general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration. Repair or restoration costs can be used even though they exceed the diminution in value of the property, but they are limited [when] restoration to the condition at the time of destruction would 'be an absurd undertaking." (punctuation, citations, and footnote omitted)).

[12] *Waldrop v. State*, 231 Ga. App. 164, 165 (498 SE2d 337) (1998).

[13] *Id.* (citation omitted).

5

costs. The owner had not, however, actually repaired the units by the time of trial because there were no tenants in the building, and he did not want to risk having the units vandalized again.

Another witness testified that, in March of 2009, someone stole the copper pipes out of the outdoor air-conditioning unit in his backyard, and it cost him about $700 or $800 to repair the unit. And a second homeowner testified that, in June of 2008, when his rental house was vacant for about a month between tenants, the house's outdoor air-conditioning unit was stolen. On a surveillance video of the incident, the owner observed the individuals who stole the unit rip out the copper coil inside of the unit, throw it over the fence, and put it into the back of their car. This witness ultimately had to replace the air-conditioning unit, which cost him $3,300.

Initially, we note that the two witnesses who testified as to what it cost them to repair or replace their own air-conditioning units provided no basis for the cost of the damage to each of the air-conditioning units vandalized by Wynn. Indeed, there was no testimony regarding the age or condition of those witnesses' air-conditioning units or whether they were at all similar to the ones vandalized by Wynn at the medical center. Thus, the only relevant testimony that the State presented in its effort to prove the value of the damage to the property *in this case* was the testimony of the

property owner. But the owner provided no testimony as to the original price of the ten air-conditioning units, their exact ages, or the condition of each individual unit at the time when they were vandalized. And even if he had testified as to the cost of the damage, there was no evidence, through his testimony or otherwise, of the condition of the damaged property both before and after the crime.[14]

Here, to prove the fair market value of the damage to property, the owner testified only to an estimated range for the repair costs that he had been given by an undisclosed source. And although evidence of the cost to repair an item *may* suffice,[15] the owner testified that no repairs had actually been performed, and we have repeatedly held that an estimate of repair costs alone is inadmissible hearsay that is insufficient to prove the fair market value of damage to property.[16]

---

[14] *See supra* note 10 & accompanying text; *Gray v. State*, 273 Ga. App. 747, 750 (2) (615 SE2d 834) (2005) ("[A]n opinion as to value based solely on cost price is inadmissible in evidence as it has no probative value. To be admissible, testimony as to cost price must be coupled with other evidence such as a showing of the condition of the item both at the time of purchase and at the time its value is in issue." (punctuation omitted)).

[15] *See supra* note 11 & accompanying text.

[16] *See, e.g.*, *In the Interest of E. W.*, 290 Ga. App. 95, 97-98 (3) (658 SE2d 854) (2008) (holding that victim's testimony as to a repair quote that he was given by an unidentified person was insufficient to establish the fair market value of the damage to a car, as the State presented no evidence of the fair market value of the car before

In its somewhat cursory brief, the State concedes that the property owner's testimony regarding the estimate he received for the repair costs was inadmissible hearsay, but it nevertheless argues that his testimony that his insurance company paid him 70 percent of those costs was strong circumstantial evidence that the repair costs would be at least $27,300 (*i.e.*, 70 percent of $39,000, which is the low end of the estimate that the owner claimed to have received for the repair costs). In support, the

and after the damage occurred); *Leeks v. State*, 281 Ga. App. 274, 275 (2) (635 SE2d 878) (2006) (noting that a repair estimate that the defendant relied on to establish a conflict in the evidence was inadmissible hearsay); *In the Interest of A. F*., 236 Ga. App. 60, 60-61 (1) (510 SE2d 910) (1999) (holding that the victim's testimony as to an estimate she was given for the cost to repair a damaged van was inadmissible hearsay, which was insufficient to prove the value required to support a conviction for criminal damage to property in the second degree); *Cardwell v. State*, 225 Ga. App. 337, 337 (484 SE2d 38) (1997) (holding that an estimated cost of repairs to the victim's truck and the original purchase price of a damaged CD player obtained from an electronic's store employee, not only did not establish the fair market value of the items, but was also inadmissible hearsay) *Cf. Barnes v. State*, 239 Ga. App. 495, 498-99 (1) (a) (521 SE2d 425) (1999) (holding that there was sufficient evidence as to the fair market value of a damaged dresser when the victim did not rely solely on written repair estimates, but also testified as to the pre-damage fair market value of the property as well as photographs of the damaged property). We note that, although some of the foregoing cases were decided in the context of restitution awards in the sentencing phase of the trial after the defendant had been convicted of second-degree damage to property, "[t]he amount of restitution ordered may be equal to or less than, but not more than, the victim's damages." *Cardwell*, 225 Ga. App. at 337 (punctuation omitted). And, similarly to the proof of value necessary to sustain a conviction at trial, "[f]air market value is the measure of such damages." *Id.* Thus, the State is required to present evidence of the fair market value at sentencing, as well as at trial, if it seeks an award of restitution.

8

State cites only two cases, which set forth the general legal principles that the value of an item may be established by opinion testimony and that "[p]roof of the value of the property damage may be shown in a number of ways." But the State presents no legal authority to support its apparent position that hearsay, which is otherwise inadmissible, may be considered when it is supported by other admissible circumstantial evidence, and we have found none.

Additionally, the State presented no evidence of the exact amount that the victim's insurance paid in connection with the damage to his property, any terms or conditions of his policy, or the basis upon which this undisclosed insurance company determined the amount it paid for the property damage. Thus, it is impossible to know whether the amount that the insurance company paid the victim, which was not confirmed by any documentary evidence, was in any way related to the fair-market value of the damage to the air-conditioning units. Perhaps most importantly, each of the ten counts in Wynn's indictment alleged property damage of at least $500 to *a single* air-conditioning unit identified specifically by its serial number. Thus, proof of the value of the damage to support *each conviction* corresponding to each of those counts must be established by evidence that the damage to each of the ten units individually exceeded $500, not by the total cost of repairs to or value of all ten air-

9

conditioning units combined. And as we have previously explained "[d]etermination of the amount of damages must be based upon fair market value, which must be determined exactly."[17] But the State presented no evidence as to the amount of property damage described in each indicted offense, much less evidence sufficient for the jury to determine the *exact* fair market value of such damage. Given these particular circumstances, the State failed to present sufficient evidence to establish an essential element of each of Wynn's convictions. As a result, Wynn's convictions for criminal damage to property in the second degree must be vacated.[18]

Nevertheless, the evidence in this case is sufficient to support convictions for the offense of criminal trespass to property under OCGA § 16-7-21 (a) "because there is clear evidence that [Wynn] intentionally damaged the property of another without

---

[17] *Gray*, 273 Ga. App. at 749 (2) (punctuation omitted); *accord In the Interest of E. W.*, 290 Ga. App. at 97 (3); *Hawthorne v. State*, 285 Ga. App. 196, 197 (1) (648 SE2d 387) (2007); *Fewox v. State*, 243 Ga. App. 651, 651 (534 SE2d 121) (2000). *Cf. Lovell v. State*, 189 Ga. App. 311, 313 (3) (375 SE2d 658) (1988) (noting that evidence of the fair market value of damage to an item, for the purposes of determining restitution, was insufficient when it was based on "approximation rather than by a proper opinion of the value of the items damaged").

[18] *See supra* notes 16-17 & accompanying text; *see Hildebrand*, 209 Ga. App. at 508 (1) (holding that evidence was insufficient to establish the value of damage to the property when the State offered no proof of any amounts paid for repair of the property and presented no photographs depicting the property damage).

consent of that other person and the damage to the property was $500 or less."[19] As

we have explained, "[c]riminal trespass is a lesser offense included within criminal

damage to property in the second degree."[20] Indeed, the property owner testified to

the extent of the damage to his air-conditioning units, and the jury viewed a

surveillance video of Wynn inflicting such damage. Given this evidence, the

factfinder "would have been authorized to draw from his own experience in forming

an estimate as to the damage to the [units]."[21] Consequently, we remand this case with

direction that a conviction for the offense of criminal trespass to property be imposed

in place of each vacated conviction for second-degree criminal damage to property.[22]

---

[19] *In the Interest of J. T.*, 285 Ga. App. 465, 466 (2) (646 SE2d 523) (2007); *see* OCGA § 16-7-21 (a) ("A person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less . . . .").

[20] *In the Interest of J. T.*, 285 Ga. App. at 466 (2); *accord In the Interest of A. F.*, 236 Ga. App. at 61 (2).

[21] *In the Interest of J. T.*, 285 Ga. App. at 466 (2); *accord In the Interest of J. S.*, 296 Ga. App. 144, 148-49 (2) (b) (673 SE2d 645) (2009).

[22] *See In the Interest of J. S.*, 296 Ga. App. at 149 (2) (b) (vacating an adjudication of delinquency for second-degree damage to property and remanding for an adjudication of being delinquent for committing an act which would have supported a conviction for criminal trespass to property were the defendant an adult); *In the Interest of J. T.*, 285 Ga. App. at 466 (2) (same); *In the Interest of A. F.*, 236 Ga. App. at 61 (2) (same); *see also Hill v. State*, 259 Ga. App. 363, 365 (1) (577 SE2d

11

And this result does not violate Wynn's due-process right to be notified of the charges against him since "a defendant is on notice of all lesser crimes which are included in the crime charged as a matter of law."[23]

For all these reasons, we vacate Wynn's convictions for second-degree damage to property, and remand the case to the trial court for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Ray and Self, JJ., concur.*

---

61) (2003) (holding that the trial court did not err in reducing a defendants conviction for second-degree criminal damage to property to criminal trespass to property when the State failed to prove damage in excess of $500).

[23] *In the Interest of J. T.*, 285 Ga. App. at 466-67 (2); *accord In the Interest of J. S.*, 296 Ga. App. at 149 (2) (b); *In the Interest of A. F.*, 236 Ga. App. at 61 (2).